**UNITED STATES of America, Appellee,**

v.

**Jonathan SINK, Appellant.**

**No. 87–5165.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1987.

Decided July 19, 1988.

Rehearing and Rehearing En Banc Denied Aug. 25, 1988.

---

Scott F. Tilsen, Minneapolis, Minn., for appellant.

Henry J. Shea, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, and HEANEY and MAGILL, Circuit Judges.

PER CURIAM.

On February 11, 1987, Jonathan Sink pled guilty to credit card fraud in violation of 18 U.S.C. § 1029(a). He also pled guilty to failing to surrender to serve a sentence in violation of 18 U.S.C. § 3146. Because Sink committed the credit card fraud while on release pending service of a sentence for a federal criminal conviction, the trial court enhanced Sink's sentence for credit card fraud pursuant to 18 U.S.C. § 3147. Sink's enhanced sentence was for two years. The trial court did not state what portion of the two-year sentence was for violating section 1029(a) and what portion was for violating section 3147. Sink was placed on probation for the conviction for failing to surrender.

■ Sink conditioned his plea of guilty on the right to contest on appeal his sentence, as enhanced under section 3147, and the failure of the district court to suppress a confession. Sink contends that the district court improperly accepted a magistrate's report and recommendation in regard to a motion by Sink to suppress certain statements. Sink testified at the suppression hearing that he made certain statements to federal agents under coercion and without any *Miranda* warning. The magistrate rejected Sink's testimony as not credible. The district court made an independent de novo review of the Magistrate's report, findings and recommendation and adopted them. We do not find error in the magistrate's report and recommendation or in the district court's review of them.

■ Sink also contends that section 3147 creates a separate crime, which must be separately presented to a grand jury, and proven beyond a reasonable doubt at trial. The government counters that the section enhances the punishment for a crime committed while the defendant is on release.

This issue has recently been decided in this Circuit in *United States v. Feldhacker*, 849 F.2d 293 (8th Cir.1988). In *Feldhacker*, this Court held that section 3147 merely enhances a sentence imposed for an underlying offense.

We, therefore, affirm the judgment of the district court in all respects.

HEANEY, Circuit Judge, concurring, with whom LAY, Chief Judge joins.

Although we are bound by the decision in *Feldhacker*, I write separately to explain my disagreement with the *Feldhacker* panel's interpretation of section 3147.

In addition to this Circuit, three other Circuit Courts have either decided or discussed the issue. In *United States v. Patterson*, 820 F.2d 1524 (9th Cir.1987), the Ninth Circuit held that the language of section 3147 unambiguously creates an enhancement. In *United States v. Cooper*,

827 F.2d 991 (4th Cir.1987), the Fourth Circuit assumed, although it did not hold, that section 3147 is an enhancement provision. In *United States v. Rodriguez*, 794 F.2d 24 (2d Cir.1986), *rev'd on other grounds*, 480 U.S. 522, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987), the Second Circuit also assumed that section 3147 is an enhancement provision. None of these opinions provides a thorough analysis of section 3147.

At the time Sink violated section 3147, in July or August of 1986, that section provided:

> A person convicted of an offense while released * * * shall be sentenced, *in addition* to the sentence prescribed for the offense, to * * * a term of imprisonment of not less than two years and not more than ten years if the offense is a felony * * *. A term of imprisonment imposed pursuant to this section shall be consecutive to any other sentence of imprisonment. [Emphasis added.]

The first part of section 3147 is similar in its structure to 21 U.S.C. § 848,[1] a statute which the Supreme Court has stated creates a substantive criminal offense. *See Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). Each statute describes a precondition (or conduct)—engaging in a continuing criminal enterprise or conviction of an offense while on release—followed by the words "shall be sentenced" and a description of the sentence. Both statutes also lack features which typify punishment enhancement statutes. Neither statute makes provision for a special sentencing hearing to consider the evidence of prior offenses or for a decision to be made based on a preponderance of the evidence standard. Each statute sets

out a "separate penalty" which is not a multiplier of the penalty established for some other offense. *Id.* at 781–82, 105 S.Ct. at 2412–13.[2]

In addition, a prior conviction is not the only precondition for imposition of the penalty under section 3147. *Cf. United States v. Wood*, 834 F.2d 1382, 1388 (8th Cir.1987) (finding that 21 U.S.C. § 841(b)(1)(A)(ii) is an enhancement statute in part because, standing alone, the section adds no other elements to the offense established in 21 U.S.C. § 841(a)). Section 3147 requires the conviction to be for an offense committed while on release. Moreover, for the penalty to be imposed, it must also be shown that before the defendant was released, he or she had actual notice of the penalty provision of section 3147. *See Cooper*, 827 F.2d at 993–95. In other words, there is a special intent requirement in section 3147—that the defendant knew that by committing an offense while on release, he or she could be subject to sanctions, not just for the substantive offense, but also for committing it while on release. Thus, section 3147 requires proof of certain conduct—that the defendant was on release and had actual notice of the applicability of section 3147—in addition to proof of a conviction under another provision.

On the other hand, I cannot say that section 3147 unambiguously creates a new offense. A reference, such as the one in section 3147 to a conviction under another statute is recognized as one possible feature of an enhancement statute. *Garrett*, 471 U.S. at 781, 105 S.Ct. at 2412. In addition, the title of section 3147—"Penalty for an offense committed while on release" —arguably identifies it as a punishment enhancement statute. *See id.*[3] In sum,

---

**1.** Section 848 begins: "Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment * * *."

**2.** In *United States v. Rush*, 840 F.2d 574, 577 (8th Cir.1988) (en banc), this Court, using the factors identified in *Garrett*, found the language and structure of 18 U.S.C.App. II § 1202(a) to be inconclusive on the issue of whether section 1202(a) is a punishment enhancement statute. The Court resorted to the legislative history of

section 1202(a) to find support for interpreting the section as an enhancement provision. *Id.* at 577–78.

**3.** However, the previous section, section 3146, uses this same kind of title—"Penalty for failure to appear"—even though section 3146 explicitly creates a substantive offense. In addition, a statute such as 18 U.S.C. § 924, is entitled "Penalties" and has a section, section 924(c), which provides an additional punishment—a sentence consecutive to any other—if a deadly or dangerous weapon is used. A charge for use of such a

the opening language of the section has the contradictory characteristics of both punishment enhancement and substantive offense statutes.

The second part of the provision sheds further light on the nature of section 3147. It states that "[a] term of imprisonment imposed pursuant to this section shall be consecutive to any other sentence of imprisonment." Moreover, this "consecutive sentence" must be "in addition" to the sentence prescribed for the offense which was committed while on release. Thus, the statute recognizes two distinct sentences, each of which punishes conduct differing in key respects. The government contends that these two sentences can be imposed for the commission of one offense. I disagree.

The fifth amendment guarantee against double jeopardy prohibits the imposition of multiple punishments for the commission of a single offense. *See North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In *Pearce*, a defendant successfully sought to have his conviction overturned and a new trial granted. On retrial he was reconvicted. The Court confronted the question whether the defendant must be given credit for a portion of the original sentence he already had served. *Id.* at 716, 89 S.Ct. at 2075. The Court held that the defendant must receive credit. Quoting from *Ex Parte Lange*, 18 Wall 163, 173, 21 L.Ed. 872 (1873), it observed: "[T]he Constitution was designed as much to prevent the criminal from being twice

punished for the same offense as from being twice tried for it." *Id.* 395 U.S. at 718, 89 S.Ct. at 2077.

The prohibition against multiple punishments for a single offense has, at the very least, been applied to preclude the courts, absent legislative authorization, from imposing such multiple punishments. *See, e.g., Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980) (stating that "Double Jeopardy Clause at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so").[4] I believe the courts should also presume, at the very least, that Congress does not intend to impose multiple punishments for one offense unless clearly expressed. This is especially true where two different statutory provisions which establish punishments also require proof of some different operative facts before the punishments can be imposed.

Generally, employment of such a presumption derives support from the settled rule that ambiguities in criminal statutes should be resolved in favor of lenity. "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958). More specifically, it derives support from the *Block-*

---

weapon must be made and must be presented to a grand jury and proven beyond a reasonable doubt. *See, e.g., United States v. Chalan*, 812 F.2d 1302, 1315 (10th Cir.1987).

**4.** Whether it *prohibits Congress* from establishing, in clear terms, multiple punishments for a single offense is not entirely apparent. In *Whalen*, the Supreme Court recognized that the Constitution places certain limitations on the power of Congress to establish criminal offenses and the punishments for violations of them. 445 U.S. at 689 n. 3, 100 S.Ct. at 1436 n. 3. However, it did not state whether the prohibition against double jeopardy was such a limitation.

In *Pearce*, the Supreme Court's holding seems to assume that the prohibition against double jeopardy forbids the state's lawmaking body (whether the legislature or the courts) from

creating state law which violates the principle. *See Pearce*, 395 U.S. at 716 & n. 7, 89 S.Ct. at 2075 & n. 7.

I note that the double jeopardy question here is more similar to the one presented in *Pearce* than the one the Supreme Court confronted in *Whalen* or, for example, *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). In *Whalen* and *Albernaz* the prototypical *Blockburger* issue was presented: whether Congress intended imposition of separate punishments for two crimes arising from the same transaction. *See Albernaz*, 450 U.S. at 344, 101 S.Ct. at 1145. Here, the government claims there is only one offense and one charge to be presented to a grand jury and proved beyond a reasonable doubt, but two sentences which can be imposed.

*burger* presumption that Congress ordinarily does not intend multiple punishment for the commission of two offenses where those offenses proscribe the same conduct. *See Whalen*, 445 U.S. at 691–92, 100 S.Ct. at 1437–38 (interpreting *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). By analogy, a court should presume that, absent a clear expression, Congress does not intend multiple punishments to be imposed for two distinct forms of conduct, unless each form of conduct constitutes a substantive offense.

The legislative history of section 3147 does not remove the ambiguity present in section 3147. For example, it speaks of section 3147 as creating an "additional penalty." *See* S.Rep. No. 225, 98th Cong., 1st Sess. 34 (1983), *reprinted in* 4 U.S. Code Cong. & Admin. News, 3182, 3217 (1984). *Accord.* H.Rep. No. 1121, 98th Cong., 2d Sess., 30 (1984); S.Rep. No. 147, 98th Cong., 1st Sess., 61 (1983); S.Rep. No. 317, 97th Cong., 2d Sess., 64 (1982). The meaning of "additional," however, is not entirely clear: does it mean an "increased" penalty which is to be considered a part of the penalty for the primary offense? Or, does it mean a wholly new, separate penalty to punish a new offense—the commission of crimes *while on release*? I cannot discern a clear indication of legislative intent on this issue from such language.[5]

By interpreting section 3147 to create a substantive offense, I would not frustrate the congressional intent to "deter those who would pose a risk to community safety by committing another offense when released under the provisions of this title and to punish those who indeed are convicted of another offense." *Id.* That purpose would remain.

The government contends that an important corollary of that purpose is to mete out swift punishment. Interpreting section 3147 as a separate substantive offense, according to the government, would slow the wheels of justice and thus hinder the effectuation of Congress's intent.

The government, however, ignores a recent admonition of the Supreme Court, made in interpreting this very section:

> [N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law.

*Rodriguez v. United States*, 480 U.S. 522, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (per curiam). I certainly see no expression that Congress intended more expeditious prosecution under section 3147 than under other sections of the federal criminal code.

In addition, the government contends that section 3147 should not be considered to create a substantive offense because to do so would not, in practice, further protect the defendant's rights. According to the government, the facts necessary for punishment under section 3147—a conviction while on release—are rarely in dispute. Treating a violation of section 3147 as a full-fledged offense, therefore, would only needlessly burden the judicial system.

Ease of conviction, however, has never been the test to determine what process a defendant is due. Moreover, the government ignores one additional fact which must be proven: that the defendant received actual notice of the possible penalties under the section before he was released. *See Cooper*, 827 F.2d 993–94. Such a fact might more likely be a subject of dispute.

In any event, I do not see a clear indication either in the language of the statute or in its legislative history that Congress intended section 3147 to be a punishment enhancement statute. In light of the am-

---

**5.** The legislative history for section 3147 contrasts with that for 18 U.S.C.App. § 1202(a), the provision which this Court found to be a punishment enhancement in *Rush*, 840 F.2d at 574. In *Rush*, we noted that the legislative history of section 1202(a) contained references such as "we are enhancing an existing Federal crime;" "under the enhanced penalty provisions of this bill;" and "[t]his bill would create no new Federal crime." *See id.* at 577–78. I find no such references in the legislative history of section 3147.

biguous statutory language and legislative history, I would interpret section 3147 so as to avoid a conflict with the prohibition against multiple punishments for a single offense and in favor of lenity. I therefore would construe section 3147 to create a substantive offense which must be charged in the indictment, presented to a grand jury, and proven beyond a reasonable doubt at trial.

The government contends that even if one accepts Sink's argument about the nature of section 3147, any error committed by the district court was essentially harmless. It argues that the sentencing court could have sentenced Sink to up to ten years on the underlying credit card offense under 18 U.S.C. § 1029 and then enhanced that sentence by an additional ten years. Thus, Sink could have received a sentence of twenty years but instead only received a single sentence of two years, which is even less than the statutory maximum of ten years in section 1029. In this way, according to the government, Sink's sentence was not, in fact, enhanced.

The government's argument, however, ignores that the sentence under section 3147 must be consecutive to any other sentence. Since the district court invoked section 3147 in sentencing Sink and since the sentence under that section had to be consecutive to any other sentence, the sentence actually ordered must have been inappropriately based, in part, on an enhancement under section 3147.

I therefore would vacate the two-year sentence imposed by the district court under section 1029 and enhanced under section 3147. Because the government did not separately charge Sink under section 3147 or present such charge to a grand jury and because Sink did not plead guilty to a charge under section 3147, I would remand for resentencing solely under section 1029.